UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



___

JENNIFER YARGER,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

**DECISION AND ORDER**

1:18-CV-00489 EAW

___

# INTRODUCTION

Represented by counsel, Plaintiff Jennifer Yarger ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 11; Dkt. 13), and Plaintiff's reply (Dkt. 15). For the reasons discussed below, Plaintiff's motion (Dkt. 11) is granted in part, the Commissioner's motion (Dkt. 13) is denied, and the matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order.

## BACKGROUND

Plaintiff protectively filed her applications for DIB and SSI on December 12, 2013. (Dkt. 7 at 17, 66).[1] In her applications, Plaintiff alleged disability beginning November 24, 2013, due to "depression, bipolar, [and] anxiety." (*Id.* at 17, 67). Plaintiff's applications were initially denied on July 3, 2014. (*Id.* at 17, 80-85). A video hearing was held before administrative law judge ("ALJ") Benjamin Chaykin on August 15, 2016. (*Id.* at 17, 32-65). Plaintiff appeared in West Seneca, New York, and the ALJ presided over the hearing from Alexandria, Virginia. (*Id.*). On February 23, 2017, the ALJ issued an unfavorable decision. (*Id.* at 14-27). Plaintiff requested Appeals Council review; her request was denied on February 26, 2018, making the ALJ's determination the Commissioner's final decision. (*Id.* at 4-7). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a

finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

# DISCUSSION

## I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2015. (Dkt. 7 at 19). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since November 24, 2013, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of affective disorder and anxiety disorder. (*Id.* at 20). The ALJ further found that Plaintiff's medically determinable impairments of restless leg syndrome, low back strain, obesity, constipation, perimenopausal status, abnormal uterine bleeding, and history of polysubstance abuse, were non-severe. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 21). The ALJ particularly considered the criteria of Listings 12.04 and 12.06 in reaching his conclusion. (*Id.* at 21-23).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels, with the following non-exertional limitations:

> (1) no exposure to dangerous hazards such as unprotected heights or dangerous machinery; (2) limited to performing simple and routine tasks, but not at a production rate pace or strict quota; (3) limited to simple instructions and simple work-related decisions; (4) limited to occasional interaction with supervisors, co-workers and the public, and no teamwork or tandem tasks; and (5) limited to a static environment, with few changes in the work setting.

(*Id.* at 23). At step four, the ALJ relied on the testimony of a vocational expert and found that Plaintiff was capable of performing her past relevant work as a hospital cleaner, as that type of work did not require the performance of work-related activities precluded by Plaintiff's RFC. (*Id.* at 26-27).

Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 27).

## II. <u>Remand of this Matter for Further Proceedings is Necessary</u>

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing: (1) the ALJ failed to develop the record to obtain two years' worth of treatment notes from Northwest Community Health Center ("Northwest"); (2) the mental RFC is not supported by substantial evidence, as the ALJ improperly rejected opinion evidence from nurse practitioner Lori Haspett ("NP Haspett") and licensed clinical social worker Maryann Antonelli ("Ms. Antonelli") and mischaracterized the record; and (3) the ALJ failed to account for Plaintiff's stress-related limitations in the RFC. (Dkt. 11-1 at 10-23). For the reasons set forth below, the Court finds that the ALJ erred by failing to develop the record to obtain mental health treatment notes from Northwest, and that this error necessitates remand for further proceedings.

### A. <u>Failure to Develop the Record</u>

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). Specifically, the ALJ must "investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Vincent*

*v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011). "The ALJ's duty to develop the administrative record encompasses not only the duty to obtain a claimant's medical records and reports, but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity." *Puckett v. Berryhill*, No. 17 Civ. 5392 (GBD) (KHP), 2018 U.S. Dist. LEXIS 197904, at *5 (S.D.N.Y. Nov. 20, 2018). "The ALJ must 'make every reasonable effort' to help the claimant get medical reports from his or her medical sources as long as the claimant has permitted the ALJ to do so." *Sotososa v. Colvin*, No. 15-CV-854-FPG, 2016 U.S. Dist. LEXIS 152800, at *7 (W.D.N.Y. Nov. 3, 2016) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)). "The ALJ's duty to develop the record applies to both *pro se* and represented parties, and is heightened in the case of *pro se* plaintiffs." *Lopez v. Comm'r of Soc. Sec.*, No. 17-CV-1504(KAM), 2018 U.S. Dist. LEXIS 186600, at *11 (E.D.N.Y. Oct. 31, 2018). However, the ALJ's duty to develop the record is not limitless. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information . . . ." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks and citation omitted).

The record shows that Plaintiff received mental health counseling at Northwest beginning in September 2013, up to and including the date of the August 15, 2016 administrative hearing. (*See* Dkt. 7 at 47, 269, 273, 315). On August 4, 2016, prior to the hearing, Plaintiff's counsel wrote to the ALJ, informing him that she was unsuccessful in her attempt to collect medical records from Northwest. (*Id.* at 241). Plaintiff's counsel

requested that the ALJ assist her in obtaining the records, and provided a list of the required providers. (*Id.* at 241-42).

The records requested and received from Northwest prior to the administrative hearing are found at Exhibits 4F and 5F of the record. (*Id.* at 269-71, 273-75). Each exhibit, which consists of a three-page summary letter, was a part of the record on the date on the administrative hearing, and the ALJ presumably was familiar with the contents of the letters. (*See id.* at 35 (ALJ noting that he had "exhibits marked . . . 1F through 7F.")). The letters are dated August 4, 2014, and July 1, 2016, are signed by NP Haspett (the July 2016 letter also is signed by Ms. Antonelli), and contain the same basic information. Specifically, the letters provide an overview of Plaintiff's treatment with Northwest, including her mental health history, medications, diagnoses, and the types of treatment Plaintiff received, including a women's weekly clinic and a more intensive "Continuing Day Treatment Phase I Program." (*Id.* at 269-71, 273-75). At the administrative hearing, Plaintiff testified that she had been attending the day treatment program for about two years. (*Id.* at 57). Both letters conclude with the assessment that, based on Plaintiff's self-destructive behavior, she should continue to attend the Continuing Day Treatment Phase I Program, which required Plaintiff's attendance five days per week, for four hours each day. (*Id.* at 271, 275).

At the administrative hearing on August 15, 2016, the ALJ acknowledged that Plaintiff was unable to obtain certain records in advance of the hearing. (*Id.* at 35). Plaintiff's counsel responded that she was unable to obtain treatment notes from Northwest, which was one of Plaintiff's treating providers "who . . . tend to just summarize their

treatment." (*Id.*). Plaintiff's counsel elaborated that while Northwest provided the treatment summary, they did not provide specific treatment notes, which would "paint the more day-to-day specific picture, because [Plaintiff has] been going there for a number of years on a day program." (*Id.* at 35-36). Plaintiff's counsel informed the ALJ that "if there's anything that you specifically need from them, in terms of a diagnosis or anymore with treatment notes, you may have to reach out to them and contact them from your office." (*Id.* at 35). The ALJ stated that if he determined he needed additional information or records from Northwest, he would have his office contact them directly. (*Id.* at 36). Plaintiff's counsel did not specifically ask the ALJ to issue a subpoena to obtain the treatment notes.

It appears from the record that following the administrative hearing, the ALJ did reach out to Northwest to obtain additional records. (*See* Dkt. 9 at 3-4). By letter dated October 11, 2016, the ALJ informed Plaintiff's counsel that he "secured additional evidence" to be entered into the record at Exhibit 8F. (*Id.* at 3). The letter informed Plaintiff's counsel that she could submit written comments regarding the additional evidence, request a supplemental hearing, or request the issuance of a subpoena for witnesses or records. (*Id.* at 3-4).

Exhibit 8F is a three-page letter dated September 14, 2016, and signed by NP Haspett and Ms. Antonelli. (Dkt. 7 at 315-17). This letter contains another summary of Plaintiff's treatment at Northwest, and much of the information is contained in the prior letters at Exhibits 4F and 5F. Exhibit 8F does not "paint the more day-to-day specific picture" of Plaintiff's mental health issues and limitations, which Plaintiff's counsel

referred to at the hearing. In other words, the September 2016 letter appears to suffer from the same deficiencies as the prior two summary letters from Northwest. In a response letter to the ALJ dated October 20, 2016, Plaintiff's counsel stated that she had no objection to the newly-submitted evidence. (*Id.* at 243). Plaintiff's counsel noted that while Northwest again "did not send more specific clinical notes, they did provide an in depth case history and current treatment needs of [Plaintiff]." (*Id.*). Plaintiff's counsel also noted that the letter supported that Plaintiff would not be able to engage in full-time work, based on the recommendation that she continue participating in the Continuing Day Treatment Phase I Program. (*Id.*). Plaintiff's counsel did not specifically ask the ALJ to issue a subpoena to obtain the treatment notes from Northwest.

Plaintiff contends that, given the incomplete record as it relates to Plaintiff's mental health treatment, the ALJ was required to issue a subpoena to obtain the missing treatment notes from Northwest. (Dkt. 11-1 at 10-14). In response to Plaintiff's argument, Defendant contends that Plaintiff, in response to the ALJ's October 11, 2016 letter, did not request the issuance of a subpoena. (Dkt. 13-1 at 14). Defendant concludes that "by virtue of the October 20, 2016 letter, Plaintiff's counsel appeared to accept that the September 14, 2016 summary letter was sufficient, did not indicate that additional information was needed (or could be obtained) . . . and did not seek additional assistance from the ALJ." (*Id.*). Defendant further argues that the ALJ was not empowered to obtain Plaintiff's underlying

therapy notes, given their private nature, and that the ALJ made every reasonable effort to obtain the records. (*Id.* at 14-16).

The Court agrees that, at the administrative hearing and in her October 20, 2016 letter, Plaintiff's counsel did not put the ALJ on notice that he needed to subpoena the treatment notes from Northwest. However, the ALJ has a duty independent of Plaintiff's counsel to investigate and develop the record. *See Dillon v. Comm'r of Soc. Sec.*, No. 17-CV-4136 (PAE) (BCM), 2018 U.S. Dist. LEXIS 154897, at *49-50 (S.D.N.Y. Sept. 7, 2018) ("while an ALJ may rely on the claimant's counsel in the first instance to obtain missing treating records, [he] must nevertheless take 'independent steps to complete the record' if necessary. Thus, courts in our Circuit have frequently found that an ALJ does not satisfy [his] duty to develop the record by relying on the claimant's attorney to obtain the missing records.") (citations omitted), *adopted*, 2018 U.S. Dist. LEXIS 163279 (S.D.N.Y. Sept. 24, 2018); *see also Cancel v. Colvin*, 14-cv-2034 (PKC), 2015 U.S. Dist. LEXIS 25219, at *14 (S.D.N.Y. Mar. 2, 2015) ("It is somewhat troubling that [the plaintiff's] counsel at the 2012 hearing failed to bring these deficiencies in the medical record to the ALJ's attention; counsel is thus at least partly responsible for the ALJ's error. Nevertheless, the law is clear that an ALJ's duty to develop the record exists irrespective of whether the claimant is represented.").

As explained above, Plaintiff's counsel indicated by letter dated August 4, 2016, and at the administrative hearing, that she was attempting to obtain treatment notes from Northwest, and that the summary provided by Northwest did not provide a full picture of Plaintiff's mental health treatment. Rather than making an attempt to further develop the

record to obtain Plaintiff's mental health treatment notes, the ALJ simply accepted the contents of Exhibit 8F as sufficient. As a result, despite Plaintiff's lengthy and intensive treatment at Northwest, the record contains only three redundant, short documents summarizing her treatment there. In the written determination, the ALJ himself acknowledged that Plaintiff's mental health record was "sparse," and noted that "[t]he letters received from Northwest Community Mental Health do not contain detailed evidence of improvement (or lack thereof) secondary to her continued mental health treatment. There is also little evidence of record to suggest how the claimant has responded to extraordinary stimuli." (Dkt. 7 at 23). In other words, it is clear that the ALJ was on notice that Plaintiff's mental health record was not complete and, at the very least, a subpoena should have been issued in an attempt to procure Plaintiff's treatment notes, in order to fill this gap in the record. *See Frederick v. Comm'r of Soc. Sec.*, No. 16-CV-898-MJR, 2018 U.S. Dist. LEXIS 149114, at *3 (W.D.N.Y. Aug. 31, 2018) ("It is incumbent upon the ALJ to develop evidence where it is apparent from the face of the record that the record lacks necessary information.").

The lack of more specific evidence relating to Plaintiff's mental health treatment is particularly problematic in this case, where the ALJ's reasoning in the written determination often hinged on the scarcity of evidence relating to Plaintiff's mental health impairments. (*See* Dkt. 7 at 21 ("In general, the medical record contains relatively few reports of memory problems or allegations of cognitive difficulty."); *id.* at 22 ("Mental status examinations throughout the record have not generally remarked upon the claimant's attention or concentration, suggesting few gross or notable abnormalities in this area."); *id.*

at 23 ("Although the evidence is somewhat sparse, on balance, the record indicates that the claimant is able to perform most of her basic daily activities independently when necessary, but receives frequent help from others."); *id.* at 24 ("Notably, the records recently received from [Northwest] . . . do not specifically address the claimant's maladaptive behavior as being due to any specific medically determinable psychiatric impairment."); *id.* at 25 ("Apart from the claimant's initial admission to Erie County Medical Center in November 2013 for medication overdose, the claimant's other examinations of record have been sparse and generally unremarkable, noting largely normal mental status.")[2]; *id.* at 25 ("the treating source record does not mention any complaints of panic or anxiety attacks. Nor did Nurse Haspett's letter from August 2014 indicate any corresponding anxiety-related diagnosis. . . ."); *id.* at 25 ("the subsequent record does not indicate any complaints of medication side effects, drowsiness, or 'fidgetiness,' as per the claimant's testimony at [the] hearing."); *id.* at 26 ("the evidence is insufficient to support the extent of limitation indicated by the opinions of Ms. Haspett and Ms. Antonelli.")).

The scarcity of evidence is not surprising, given that the record contains only nine pages' worth of summary notes from Plaintiff's primary mental health treatment provider, which she saw on a daily basis for over two years. Had the ALJ subpoenaed the mental health treatment notes, he may have discovered that much of the information he found to be lacking – including mental status examinations, notes addressing Plaintiff's maladaptive

---

[2] In support of the proposition that Plaintiff has had largely normal mental status examinations, the ALJ points to records submitted by Plaintiff's primary care physicians. However, the record lacks information pertaining to Plaintiff's mental status examinations performed throughout her treatment at Northwest, which is a provider that specializes in mental health treatment.

behavior, and complaints of panic or anxiety attacks – was present in the record. Given that the three letters provided by NP Haspett between 2014 and 2016, in which she consistently opined that Plaintiff engaged in "[e]xtremely self-destructive behavior," and needed to continue intensive day treatment "for support and structure, medication and further assessment in order to avert self-injurious behaviors or psychiatric admission," it is likely that information supporting this opinion is found in the two years' worth of treatment notes.

In sum, it is clear that the ALJ was on notice of the gap in Plaintiff's mental health record, and that this gap at least partially informed his determination that Plaintiff is not disabled. The ALJ had a duty, independent of Plaintiff and her counsel, to ensure that the record was complete so that he could make a determination that is supported by substantial evidence. The ALJ failed to fulfill his duty in this case. *See Harris v. Berryhill*, 293 F. Supp. 3d 365, 369 (W.D.N.Y. 2018) ("Ultimately, an ALJ is expected to make 'every reasonable effort' to fully and fairly develop the record, taking into account the circumstances of the case. Under the particular circumstances presented here — where the claimant's impairments are primarily mental in nature, where the sole treating mental health care source refused to provide its treatment records, where the evidence in the incomplete record nonetheless suggested serious difficulties in one or more areas of mental functioning that cried out for amplification, and where the ALJ declined to exercise his power to subpoena the missing records — the ALJ cannot be said to have made 'every reasonable effort' to complete the record.") (citations omitted). On remand, the ALJ should work to ensure that the record as it relates to Plaintiff's mental health treatment is complete,

including issuing a subpoena to attempt to obtain Plaintiff's mental health treatment notes from Northwest. The Court further notes that these additional records may contain information permitting the ALJ to more thoroughly assess the opinions of NP Haspett and Ms. Antonelli regarding Plaintiff's need to participate in the Continuing Day Treatment Phase I Program. This opinion evidence is significant given the time commitment of the program, which would seem to preclude Plaintiff's participation in full-time work.

B. **Plaintiff's Remaining Arguments**

As set forth above, Plaintiff has identified additional reasons why she contends the ALJ's decision was not supported by substantial evidence. However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach these issues. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 U.S. Dist. LEXIS 165592, at *32 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 U.S. Dist. LEXIS 58236, at *80 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, 2015 U.S. Dist. LEXIS 58203 (S.D.N.Y. May 4, 2015).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 11) is granted to the extent that the matter is remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings (Dkt. 13) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: April 26, 2019
      Rochester, New York